UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DENNIS R. MILLER, et al., | Case No. 2:19-CV-2213 JCM (DJA) |
| Plaintiff(s), | ORDER |
| v. | |
| EDWARD M. WEINMANN, et al., | |
| Defendant(s). | |

Presently before the court is defendants Edward Weinmann ("Weinmann") and Advanced Masonry Consulting, Inc.'s ("AMC") (collectively "defendants")'s motion for summary judgment (ECF No. 57). Plaintiffs Dennis Miller ("Miller") and Omni Block, Inc. ("Omni Block") (collectively "plaintiffs") filed a response (ECF No. 58), to which defendants replied (ECF No. 59).

Also before the Court is defendants' list of objections to evidence offered by plaintiffs in their response to defendants' motion for summary judgment. (ECF No. 60).[1] Plaintiffs filed a response to these objections (ECF No. 61), to which defendants replied (ECF No. 62).

**I.  Background**

This action is a trademark dispute arising from an alleged breach of contract and commercial misconduct. Miller is the founder of Omni Block, a company formed in 1993 that

---

[1] Defendants filed ECF No. 60 as a motion to strike, but they titled the filing as an objection. The court will address this issue accordingly.

**James C. Mahan**
**U.S. District Judge**

markets insulated concrete masonry blocks for use in residential and commercial construction. (ECF No. 38 at 3); (ECF No. 57 at 3). On August 24, 2012, Miller and Weinmann entered into an independent contractor agreement (the "agreement") under which Weinmann's primary responsibility was to market the blocks and license third parties, specifically cementitious block manufacturers and distributors. (ECF No. 38 at 3). These manufacturers and distributors would subsequently "promote, advertise, manufacture, use, install, distribute, assemble, sell, and offer for sale" Miller and Omni Block's patented unique non-mortar interfering insulating inserts and corresponding block or brick." (*Id.*).

On February 18, 2019, Miller and Weinmann terminated the agreement at Weinmann's behest. (*Id.*). Plaintiffs allege that Weinmann's motivation to seek rescission of the agreement was to take over plaintiffs' business by soliciting their customers and undermining plaintiffs while the agreement was still in place. (*Id.* at 3-4). Plaintiffs refer to two specific instances in their first amended complaint highlighting Weinmann's misconduct.

First, plaintiffs posit that following termination of the agreement, Weinmann used an Omni Block licensee operating outside his territory to supply actual Omni Block product to a contractor working on a project at the Orlando International Airport (the "airport project"). (*Id.* at 5). Plaintiffs contend Weinmann made a misrepresentation to the licensee by claiming he was still working with Omni Block, as his main goal was to contract for the airport project on behalf of his own company, AMC. (*Id.*). Omni Block alleges it designed the masonry aspects of the airport project and received no profits for its efforts. (*Id.*). Additionally, Weinmann used terms on his invoices referencing Omni Block, despite no longer working for Omni Block, in securing these deals for his benefit through AMC. (*Id.* at 8). The second instance accusing Weinmann of wrongdoing involves what plaintiffs refer to as the "Columbia project," wherein they claim he

**James C. Mahan**
**U.S. District Judge**

- 2 -

used Omni Block specifications to win a major project at 640 Columbia Street in New York.  (*Id.* at 9).

Plaintiffs' first amended complaint asserts the following causes of actions: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional interference with contractual relations; (4) trademark infringement; (5) unfair competition under the Lanham Act; (6) trade secret theft; (7) fraud in the inducement; and (8) defamation. (*Id.* at 6-11).  Weinmann filed an individual counterclaim in conjunction with defendants' answer, claiming breach of contract, contractual breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, and fraud.  (ECF No. 39 at 17-21).  Defendants now move for summary judgment on all of plaintiffs' claims.  (ECF No. 57).  Weinmann also moves for summary judgment on his own claim for breach of contract, alleging that Miller owes him $11,300.00 as reimbursement for product testing.  (*Id.* at 25).

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

James C. Mahan
U.S. District Judge

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id*.

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,

**James C. Mahan**
**U.S. District Judge**

- 4 -

1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**III.     Discussion**

As an initial matter, the court must first address defendants' objections to evidence offered by plaintiffs in their response to defendants' motion for summary judgment. (ECF No. 60). Defendants object to the admissibility of nine factual assertions set forth in plaintiff's response; numerous declarations made by witnesses Dennis Miller, Sean Delaney, and John Maher; and five exhibits. (*Id.*). In evaluating the legal merits of these objections, plaintiffs' ensuing response, and defendants' reply, the court need not tarry.

**James C. Mahan**
**U.S. District Judge**

- 5 -

Defendants' filing is rife with procedural deficiencies.  The local rules of this district provide that unlike motions, responses, and other briefs, "replies in support of a motion for summary judgment are limited to 20 pages."  LR-7-3(a); *Heegel v. Nevada Prop. 1 LLC*, No. 2:20-cv-00001-CDS-BNW, 2022 WL 3229186 (Aug. 10, 2022).  While the local rules are not statutes, a common principle of statutory construction dictates that the incorporation of one statutory provision to the exclusion of another must be presumed intentional.  *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000); *Heegel*, 2022 WL 3229186 at *1.

Defendants themselves appear unaware as to what type of document they are filing.  The docket for the case notes that "[d]ocument 60 was filed as a motion to strike, but titled as an Objection/Response.  The name of the entry was modified to match the filing and links were made to the underlying motion for summary judgment."  (ECF No. 62).

Defendants could have either sought leave of the court to file excess pages or incorporated these objections into their reply.  They failed to do the former, and they did not proceed with the latter option because their reply would then exceed twenty pages and violate Local Rule 7-3.  It thus appears that defendants' filing is a veiled attempt to circumvent the page limit and game the evidence to their advantage.  For these reasons, the court will not consider defendants' objections to evidence offered by plaintiffs in their response to defendants' motion for summary judgment, and can now proceed to evaluate the motion on the merits.

A.  Contract-related claims

Defendants move for summary judgment on three claims that relate directly to the agreement executed by Miller and Weinmann on August 24, 2012.  These claims are for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) intentional

**James C. Mahan**
**U.S. District Judge**

- 6 -

interference with contractual relations. The court will address each cause of action separately, although some elements of each claim overlap.

>   i.  *Breach of contract*

Defendants first move for summary judgment on plaintiffs' breach of contract claim. "A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (citation omitted). To prevail on a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a valid contract; (2) that the plaintiff performed or was excused from performance; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages. *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2001); *see also Sierra Dev. Co. v Chartwell Advisory Group, Ltd.*, 223 F. Supp. 3d 1098, 1103 (D. Nev. 2016).

The court need only analyze the third element of a breach of contract claim, the breach itself, as the parties do not contest the agreement existed and that Weinmann performed pursuant to the agreement. Defendants aver that the court should enter summary judgment against plaintiffs on their breach of contract claim because the agreement contains an express provision that allowed Weinmann to compete, and there is no evidence that Weinmann developed his own product prior to the agreement's termination. (ECF No. 57 at 10). Weinmann points to the provision stating that "[t]he Subcontractor is expressly free to perform services for other parties while performing services for the Contract" as latitude allowing him to compete with Miller. (*Id.*). Plaintiffs counter that being free to perform services is not synonymous with being able to push one product to the detriment of another. (ECF No. 58 at 6).

The starting point for the interpretation of any contract is its plain language. *Brewington v. State Farm Mut. Auto. Ins. Co.*, 45 F. Supp. 3d 1215, 1218 (D. Nev 2014); *see Klamath Water*

**James C. Mahan**
**U.S. District Judge**

- 7 -

*Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) ("[w]henever possible, the plain language of the contract should be considered first."). "Then, using the plain language of the contract, the court shall effectuate the intent of the parties, which may be determined *in light of the surrounding circumstances*." *Brewington*, 45 F. Supp. 3d at 1218 (quoting *NGA #2 Ltd. Liab. Co. v. Rains*, 113 Nev. 1151, 946 P.3d 163, 167 (1997)) (emphasis added).

The plain language of the agreement explicitly states that Weinmann is free to perform other services for other parties. (ECF No. 57-13 at 6). Furthermore, the agreement does not contain a single provision that restricts Weinmann from competing. Miller knew that Weinmann had experience in the field of insulated masonry blocks, and it was foreseeable that the current issue would arise. The onus was thus on Miller, who, according to the contract, "engaged" Weinmann as an independent contractor, to prevent this situation from occurring by including an express non-compete clause in the agreement. He did not. Accordingly, both the plain meaning of the agreement and the surrounding circumstances demonstrate that Weinmann indeed had permission to compete with Miller, although there is no evidence he even did so.

To cinch the matter, Miller testified he had no evidence that Weinmann developed any new products prior to the termination of the agreement. (ECF No. 57-2 at 126:15-138:8). It also appears that the allegation in his first amended complaint that Weinmann approached him in January of 2018 to discuss his new product was false, as Miller never recalled such a conversation, and if there was one, he claims "it was much further down the road." (ECF No. 57-2 at 115:16-21).

There is no genuine issue of material fact—the agreement did not contain any language prohibiting Weinmann's actions, and there is no evidence that Weinmann developed his new idea

**James C. Mahan**
**U.S. District Judge**

- 8 -

before the agreement's termination. The court grants defendants' motion for summary judgment as to plaintiffs' claim for breach of contract.

>    ii.    *Breach of the implied covenant of good faith and fair dealing*

Defendants next move the court to enter summary judgment on plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith the plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *See Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).

A contractual breach of the implied covenants of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Id.*; *see Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 2d 1222, 1252 (D. Nev. 2016).

Plaintiffs' specific allegation regarding this cause of action, that Weinmann breached the implied covenant by "push[ing] his own agenda and the New Product while the ICA remained in effect" cannot survive summary judgment for the same reasons as their breach of contract claim. (ECF No. 38 at 7). Again, Miller himself admitted that he has no evidence showing that Weinmann was working on any new technology prior to February 18, 2019, the date of the agreement's termination. (ECF No. 57-2 at 115:16-21). Additionally, the agreement did not contain an explicit non-compete clause. (ECF No. 57-13).

Plaintiffs' response argues bad faith on the part of Weinmann because he failed to notify Miller of the Omni Block patent expiration date. (ECF No. 58 at 8). Such an assertion is irrelevant.

James C. Mahan
U.S. District Judge

- 9 -

This district has been clear in delineating the different duties owed to employers by employees and independent contractors. *See Tousa Homes, Inc. v. Phillips*, 363 F. Supp. 2d 1274, 1280-81 (holding that where there was no non-competition clause in a contract between an employer and an independent contractor, the independent contractor did not owe the employer a duty of loyalty, unlike the duty owed by an employee). Moreover, Miller should have been aware when the patent expired for the very project he developed. There is no genuine issue of material fact, and the court grants defendants' motion for summary judgment as to plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

      iii.   *Intentional interference with contractual relations*

The final contract-related claim on which defendants move for summary judgment is intentional interference with contractual relations. To prove a claim for intentional interference with contractual relations, the plaintiff must show (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. *J.M. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

Plaintiffs state that the instances of Weinmann interfering with the contractual relations of Omni Block are "plentiful," yet they fail to identify a single project for which they had a valid and existing contract. (ECF No. 58 at 9). The two declarations submitted by plaintiffs meant to show Weinman's interference come from representatives of Westbrook Block, a licensee of Omni Block. (ECF Nos. 58-9 and 58-10). In exhibit 10 to plaintiffs' response, John Maher, the general sales manager for Westbrook Block, claims, "[i]t now seems apparent that Mr. Weinmann then contacted a competitor . . . and informed them of at least one confidential project (640 Columbia in Brooklyn NY) that we had been working on for almost 2 years in conjunction with Omni Block."

**James C. Mahan**
**U.S. District Judge**

- 10 -

(ECF No. 58-10 at 3). It does not matter that plaintiffs believe Omni Block lost the Columbia project due to Weinmann's action. There is no evidence in the record to suggest plaintiffs had a contract for this project to begin with. Accordingly, the court must grant defendants' motion for summary judgment as to plaintiffs' claim for intentional interference with contractual relations, as plaintiffs failed to submit to the court any contract or agreement relating to the Columbia project or airport project.

### B. Trademark-related claims

Defendants also move for summary judgment on three trademark-related claims in plaintiffs' first amended complaint. These claims are for (1) trademark infringement; (2) unfair competition under the Lanham Act, and (3) trade secret theft. Given the almost identical elements for trademark infringement and unfair competition under the Lanham Act, the court will address those two claims in tandem.

#### iv. *Trademark infringement and unfair competition under the Lanham Act*

Defendants seek summary judgment on plaintiffs' claim for trademark infringement, specifically relating to the use of "Omni-formative" terms on Weinmann's invoices with clients. (ECF No. 38 at 8). To prevail on a claim for direct trademark infringement, a plaintiff must show "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quotes and citation omitted).

Next, the court proceeds to the central inquiry of a trademark infringement claim, which is "whether a reasonably prudent marketplace consumer is likely to be confused as to the origin of the good or service bearing one of the marks." *Stone Creek, Inc. v. Omnia Italian Designs, Inc.*, 875 F.3d 426, 431 (9th Cir. 2017) (quotes and citation omitted).

**James C. Mahan**
**U.S. District Judge**

1   There are two types of consumer confusion: forward and reverse. "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016). "Reverse confusion, on the other hand, 'occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one.'" *Id.* (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005)).

Here, plaintiffs argue that Weinmann's use of the term "Omni-style insulated block" on an invoice dated September 11, 2019, in conjunction with providing marketing materials to falsely persuade potential customers that he is affiliated with Omni Block, is likely to create confusion in the market. (ECF No. 38-4 at 2). Instead of wading into the proverbial murky waters of which specific test to apply regarding whether consumer confusion exists, the court looks to Ninth Circuit precedent.

Because of the intensely factual nature of trademark disputes, courts generally disfavor summary judgment in the trademark arena. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (Bybee, J.) "Likelihood of confusion is a factual determination, [and] district courts should grant summary judgment motions regarding the likelihood of confusion sparingly." *Id.* at 1039 (quoting *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d at 901-02 (9th Cir. 2002)). Defendants submit Weinmann's own declaration as evidence to establish that the term "Omni-style insulated block is a phrase used within the industry to refer to insulated blocks." (ECF No. 57-1 at 8). Plaintiffs respond with a declaration that other manufacturers use the specific brand name when referring to the actual block. (ECF No. 58-1 at 2).

**James C. Mahan**
**U.S. District Judge**

- 12 -

Given Ninth Circuit precedent and the opposing positions by the parties, the court is confident that a question of consumer confusion is close enough that it should be answered as a matter of law by a jury, not as a matter of law by a court. Confusion is also the central element in a claim for unfair competition under the Lanham Act. 15 U.S.C. § 1125(a). Thus, a genuine issue of material fact exists as to plaintiffs' claims for trademark infringement and unfair competition under the Lanham Act. Therefore, the court denies defendants' motion for summary judgment on these two counts of plaintiffs' first amended complaint.

> v. *Trade secret theft*

The final trademark-related claim asserted by plaintiffs on which defendants move for summary judgment is trade secret theft. A plaintiff establishes misappropriation under the Uniform Trade Secret Act by showing (1) a valuable trade secret; (2) misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and (3) the requirement that the misappropriation be wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose." *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000).

As discussed, *supra*, there is no genuine issue of material fact regarding when Weinmann conceived the idea of his new product. The genesis of the idea came after the termination of the agreement. (ECF No. 57-1 at 3). Plaintiffs cannot prevail on a claim for trade secret theft because they fail to establish Weinmann created his new product before rescission of the agreement. The court finds defendants' argument persuasive that it is also hypocritical for plaintiffs to call the new product a trade secret. (ECF No. 57 at 20). Omni Block's website contains specific diagrams of masonry blocks and inserts, information also accessible on the United States Patent and Trademark Office website. (ECF No. 57-5).

James C. Mahan
U.S. District Judge

- 13 -

Miller himself testified that insulated masonry blocks have been in use since the 1960's, and that he has never held a patent for the masonry block. (ECF No. 57-2 at 19:10-19 and 23:16-19). For plaintiffs to now assert that the new product is a trade secret is far-fetched. There is no genuine issue of material fact, and the court grants defendants' motion for summary judgment as to plaintiffs' claim for trade secret theft.

C. Fraud in the inducement

Defendants request the court to enter summary judgment on plaintiffs' claim for fraud in the inducement. To state a claim for fraud in the inducement, a plaintiff must show: (1) a false representation made by defendant; (2) defendant's knowledge or belief that the representation was false, or insufficient knowledge to make such a representation; (3) defendant's intention to therewith induce plaintiff to consent to the contract's formation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damages resulting from such reliance. *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 89 P.3d 1009, 1018 (Nev. 2004).

Plaintiffs' first amended complaint states that "Miller would not have entered into the Termination had Miller known that Weinmann was actively seeking to steal Omni Block's business by using the know-how he obtained while representing Omni Block." (ECF No. 38 at 10). The problem with this cause of action is the same as the one identified in plaintiffs' claim for trade secret theft. There is no evidence supporting the notion that Weinmann developed the idea for his own product prior to termination of the agreement. Miller himself testified that any conversation, if it even occurred, with Weinmann regarding the development of a new product came "much further down the road" then the January 2018 date listed in the first amended complaint. (ECF No. 57-2 at 115:16-21).

James C. Mahan
U.S. District Judge

- 14 -

The four corners of the agreement also undermine plaintiffs' claim for fraud in the inducement. A claim for fraud in the inducement fails as a matter of law when it conflicts with the express terms of the contract. *Rd. & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 381 (Nev. 2012). The agreement explicitly denoted Weinmann as an independent contractor with authorization to perform services for other parties. (ECF No. 57-13 at 6). Finally, defendants' interpretation of the key man provisions is correct: they do not contain any language that imposes a fiduciary on Weinmann. (*Id.*). There is no genuine issue of material fact, and the court grants defendants' motion for summary judgment as to plaintiffs' claim for fraud in the inducement.

D. Defamation

Defendants move for summary judgment on plaintiffs' claim for defamation. To state a claim for defamation, a plaintiff must allege "(1) a false and defamatory statement by a defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pegasus v. Reno Newspapers*, 57 P.3d 82, 90 (2002) (brackets, quotes, and citation omitted).

"If the defamation tends to injure the plaintiff in his or her business or profession, it is deemed defamation per se, and damages will be presumed." *Chowdry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993) (italics omitted). "A claim for defamation per se primarily serves to protect the personal reputation *of an individual*." *Clark Co. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 504 (Nev. 2009) (emphasis added).

Plaintiffs allege that Weinmann told a third-party licensee of Omni Block that the licensee should discuss business directly with him, since "Miller does not have time for you" and "Omni Block gouges its licensees." (ECF No. 38 at 10). Plaintiffs do not present any evidence that Weinmann made these two statements, or that such statements are false. Interestingly, Plaintiffs

James C. Mahan
U.S. District Judge

- 15 -

do not even address the two remarks, and instead, for the first time, allege that Weinmann said that (1) he was not being paid his commissions, (2) he was not being fairly compensated, and (3) he was not contractually protected. (ECF No. 58 at 16).

These statements differ from those alleged in the first amended complaint, and it is a question whether the court should even consider them. Regardless, plaintiffs detail no evidence that any of the three statements are false. As defendants aptly point out, one of the exhibits presented by plaintiffs contains an actual admission by Miller that he had not paid Weinmann all commissions owed to him. The statement that Weinmann was not contractually protected is, as defendants argue, a legal opinion. *See New Indep. Broad. Corp. v. Allen*, 664 P.2d 337, 341 (Nev. 1983) ("statements of opinion as opposed to statements of fact are not actionable."). It is impossible to construe the statement in the mind of Weinmann as a fact, as he does not possess legal expertise. There is no genuine issue of material fact, and the court grants defendants' motion for summary judgment as to plaintiffs' claim for defamation.

E. <u>Weinmann's motion for summary judgment</u>

Weinmann moves for summary judgment on his counterclaim for breach of contract, alleging that Miller owes him $11,300.00 as a reimbursement payment for testing insulated masonry units. (ECF No. 57 at 25). In support of his position, Weinmann cites to an email in which Miller writes, "[s]end me the invoice for the testing. I will agree to pay you for the testing over a 3-year period interest free." (ECF No. 57-8 at 8). Miller counters that the use of the term "will" implies a future promise contingent upon a new formal agreement. (ECF No. 58 at 20).

A plain reading of the four corners of the email indicates a written and signed promise by Miller to pay Weinmann for the testing. Indeed, the following sentence reads "[d]o not do anything in the future without prior written consent." (ECF No. 57-8 at 8). This sentence shows that Miller

**James C. Mahan**
**U.S. District Judge**

- 16 -

is agreeing to pay Weinmann in this specific case, but in the future Weinmann will need written permission to conduct testing.  There is nothing in the email to suggest Miller's promise had any attached contingency.  No genuine issue of material fact exists, and the court grants Weinmann's motion for summary judgment as to his counterclaim for breach of contract.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 57) be, and the same hereby is, GRANTED as to counts I, II, III, VI, VII and VIII of plaintiffs' first amended complaint (ECF No. 38).

IT IS FURTHER ORDERED that defendants' motion for summary judgment (ECF No. 57 be, and the same hereby is, DENIED as to counts IV and V of plaintiffs' first amended complaint (ECF No. 38).

IT IS FURTHER ORDERED that counterclaimant Edward Weinmann's motion for summary judgment (ECF No. 57) be, and the same hereby is, GRANTED as to count I of his counterclaim (ECF No. 39).

DATED August 23, 2023.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**